402 So.2d 1178 (1981)
Willie Albert DORSEY, Appellant,
v.
STATE of Florida, Appellee.
Norman Luther BRITTEN, Appellant,
v.
STATE of Florida, Appellee.
Nos. 58365, 58886.
Supreme Court of Florida.
July 30, 1981.
*1179 John A. Henninger of the Law Offices of Robert W. Pope, St. Petersburg, for appellant, Willie Albert Dorsey.
Joseph M. Ciarciaglino, Jr. of Osborne & Ciarciaglino, St. Petersburg, for appellant, Norman Luther Britten.
Jim Smith, Atty. Gen., and Robert J. Landry, Asst. Atty. Gen., Tampa, for appellee.
*1180 OVERTON, Justice.
These causes are consolidated appeals from judgments of a trial court which upheld the validity of section 943.462, Florida Statutes (1977), the Racketeer Influenced and Corrupt Organization (RICO) Act. We have jurisdiction under article V, section 3(b)(1), Florida Constitution (1972). We uphold the constitutionality of the act as applied to appellants. We also hold that there can be no expectation of privacy in "beeper" messages sent over the airwaves and that these messages are not protected by Florida's wiretap law. We find, however, that we must reverse appellants' convictions and remand for new trials because of trial error in admitting prejudicial evidence of a murder allegedly committed by the organization but not charged against appellants. We conclude that this type of error is not harmless.
Appellants Dorsey and Britten were tried and convicted of one charge each of violating section 943.462. Trial testimony indicated that appellants' arrests stemmed from an investigation by the St. Petersburg Police Department into the operation of a narcotics ring headed by one John Bailey. The investigation commenced with the use of a paid informant, whose information prompted the police to monitor, by means of a radio scanner, messages received by Bailey and others on a "pocket pager" or "beeper" rented by Bailey. The information the police gathered from the intercepted radio broadcasts was used to obtain a court order authorizing a wiretap of Bailey's telephone. This wiretap produced information eventually leading to sixteen arrests. The state entered a nolle prosequi in one case, and all other defendants pled guilty except the two appellants.
Both appellants filed pretrial motions to dismiss, alleging that the RICO Act is unconstitutional for a variety of reasons. Both motions were denied.
Some of appellants' arguments against the statute have been rejected in State v. Whiddon, 384 So.2d 1269 (Fla. 1980), and Moorehead v. State, 383 So.2d 629 (Fla. 1980). In this appeal, appellants contend that the statute is unconstitutional as applied to them because the definition of the term "enterprise,"[1] which specifically includes illicit as well as licit enterprises, conflicts with the expressions of legislative intent in the uncodified preamble of the act.[2] The argument has no basis. Even if we were to find that the preamble's emphasis on organized crime infiltrating legitimate business poses some conflict with the inclusion of illicit enterprises in the definitional section, such conflict would present at most a problem of construction and not a constitutional defect. What appellants are really asking this Court to do is to read the words "illicit enterprises" out of the statute on the basis of the act's preamble. This would be totally inappropriate. It is well settled that such "prefatory language" cannot expand or restrict the otherwise unambiguous language of a statute.

*1181 [T]he preamble is no part of the act, and cannot enlarge or confer powers nor control the words of the act, unless they are doubtful or ambiguous.
Yazoo & Mississippi Valley Railroad v. Thomas, 132 U.S. 174, 188, 10 S.Ct. 68, 73, 33 L.Ed. 302 (1889). Accord, Coosaw Mining Co. v. South Carolina, 144 U.S. 550, 12 S.Ct. 689, 36 L.Ed. 537 (1892); Association of American Railroads v. Costle, 562 F.2d 1310 (D.C. Cir.1977); Hughes Tool Co. v. Meier, 486 F.2d 593 (10th Cir.1973); In re Camden Shipbuilding Co., 227 F. Supp. 751 (D.Me. 1964); Idaho Commission on Human Rights v. Campbell, 95 Idaho 215, 506 P.2d 112 (1973). The language of section 943.461(3) is clear. Moreover, its intended scope is clear when one examines the federal RICO act,[3] in which the definition of enterprise is identical to Florida's except for this state's specific inclusion of illicit enterprises. Clearly, the Florida legislature intended to avoid the dispute over construction which plagued the federal courts of appeals. Compare United States v. Turkette, 632 F.2d 896 (1st Cir.1980), rev'd, ___ U.S. ___, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981); and United States v Anderson, 626 F.2d 1358 (8th Cir.1980), cert. denied, ___ U.S. ___, 101 S.Ct. 1351, 67 L.Ed.2d 336 (1981); with United States v. Sutton, 642 F.2d 1001 (6th Cir.1980) (en banc); United States v. Whitehead, 618 F.2d 523, 525 n. 1 (4th Cir.1980); United States v. Rowe, 598 F.2d 564 (9th Cir.1979), cert. denied, 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 780 (1980); and United States v. Altese, 542 F.2d 104 (2d Cir.1976), cert. denied, 429 U.S. 1039, 97 S.Ct. 736, 50 L.Ed.2d 750 (1977). This dispute has only recently been resolved. United States v. Turkette, ___ U.S. ___, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981) (Federal RICO Act defined to encompass "illegitimate" as well as "legitimate" enterprises). Whatever may have been the congressional intent in defining "enterprise" in the federal act, the deliberate insertion of clarifying words in the Florida act has settled the matter in state prosecutions.
The second point for discussion concerns appellant Dorsey's contention that the court should have granted his motion to dismiss on the basis of vagueness of the information and statement of particulars, which specifically listed seven examples of drug-dealing.
Dorsey complains that the information is void because it is so vague as to subject him to multiple prosecutions, since it alleges a "pattern of racketeering activity... which includes but is not limited to the following described acts." However, through the statement of particulars and Florida's broad discovery procedures, the appellants had full knowledge of the specific facts justifying the charge in the information.
Dorsey argues that the information must be written so as to avoid double jeopardy. United States v. Cuesta, 597 F.2d 903 (5th Cir.), cert. denied, 444 U.S. 964, 100 S.Ct. 451, 62 L.Ed.2d 377 (1979). Determining exactly what offenses for which jeopardy has attached under a RICO prosecution may be difficult in some cases, but clearly in this case jeopardy has attached for any racketeering charge, brought under section 943.462, for the time period of April, 1978, through May, 1979. The fact that a RICO charge covers a period of months does not mean that jeopardy automatically attaches for any factually related charges based upon incidents during that period, except for another prosecution under RICO itself. Whether a predicate offense underlying a RICO charge may be separately prosecuted depends upon a close examination of the two offenses. We need not reach the issue of whether the double jeopardy clause would prohibit prosecutions for drug offenses at the times and places included in the statement of particulars, since no such charges have been brought. In our opinion, it is clear that since the state's evidence in the instant case would be limited to those incidents of which the defendant was given notice in the statement, jeopardy has not attached for any other drug offenses during that period. We conclude that Dorsey's contention that the information and statement *1182 of particulars were fatally vague and defective is without merit.
The third issue is the contention of appellants Dorsey and Britten that they were substantially prejudiced by references, in the information and in testimony allowed at trial over their objections, to the murder of one Clara Yarn, allegedly committed by other members of the Bailey organization. The state asserts that the evidence, which included the testimony of the coroner as to cause of death, was relevant to show the "existence," "scope," and "purposefulness" of the organization. We find we must agree with appellants that this testimony, in the manner it was presented, constituted prejudicial error.
The record reflects that the organization member or members who allegedly committed the murder were not on trial with Dorsey and Britten. This was an executionstyle murder of the girl friend of an organization member, which was not alleged as a specific offense charged against these appellants. Further, the trial judge had previously denied a requested statement of particulars on the murder, so appellants were not apprised of the specifics in order to "defend" against his crime which the state conceded they did not commit. The record shows that the trial judge was clearly bothered by this evidence at the time of its admission.
It is one thing for evidence to be presented to a jury concerning the structure and drug-dealing procedures of the organization when specific drug offenses are charged, but it is quite another to hear in detail about a murder not specifically charged or proven.
The state relies upon United States v. Elliott, 571 F.2d 880 (5th Cir.), cert. denied, 439 U.S. 953, 99 S.Ct. 349, 58 L.Ed.2d 344 (1978). Elliott is not controlling in this case. In Elliott four defendants who did not commit murder stood trial jointly with, and as confederates of, two others who committed the murder, all in the course of a broad-ranging RICO prosecution involving over a dozen distinct predicate crimes. The Fifth Circuit in Elliott concluded that the United States Constitution "does not guarantee a trial free from the prejudice that inevitably accompanies any charge of heinous group crime; it demands only that the potential for transference of guilt be minimized to the extent possible under the circumstances in order to `individualize each defendant in his relation to the mass.'" Id. at 905 (citation omitted). The trial in Elliott contains a significant distinction from the instant case. In Elliott the prosecution actually proved the murder in question, and it was one of the predicate offenses underlying the RICO charge. The murder in Elliott was clearly relevant, unlike the instant case in which the murder was not charged against anyone being tried.
We must conclude that the testimony concerning the murder was not harmless error; consequently, we must reverse the convictions and remand for a new trial.
Appellants' remaining points are without merit, and only one warrants discussion in order to resolve the issue on retrial. It presents a question under Florida's security of communications statute that has produced absurd results in the comparable federal law.
Appellants contend that the trial court erred in denying their motion to suppress evidence acquired as a result of the wiretap order based upon "beeper communications" intercepted by police. These "beepers" were a type of pocket pager that one carries on his person and through which he may receive messages. This is accomplished when another person dials the telephone number of the company that distributes the beepers. The calling party hears a tone and thereafter has ten seconds in which to announce his message. This message is then converted into radio waves and transmitted to the party with the beeper and to any member of the public who has a radio tuned to this frequency. The receiving party can only listen to the message, since the beeper is a receiver and not a transmitter.
A "bearcat scanner," capable of receiving any programmed frequency, was used by *1183 police to intercept these beeper messages. Appellants contend that a court order was necessary to legally intercept these communications under chapter 934, Florida Statutes. Since a court order was not obtained, appellants contend that this was a wiretap and all evidence acquired therefrom was also illegal.
Appellants' argument is basically that the beeper messages come within the definition in chapter 934 of "wire communication," which does not include an express requirement of an expectation of privacy, unlike the definition of "oral communication." These definitions, found in subsections (1) and (2) of section 934.02, Florida Statutes (1977), are as follows:
"Wire communication" means any communication made in whole or in part through the use of facilities for the transmission of communications by the aid of wire, cable, or other like connection between the point of origin and the point of reception... .
"Oral communication" means any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation and does not mean any public oral communication uttered at a public meeting[.]
These definitions correspond in relevant parts to those set forth in 18 U.S.C. § 2510, construction of which has led to conclusions that communications similar to those at bar were "wire communications," producing what the federal courts concede are "absurd" results. See United States v. Hall, 488 F.2d 193 (9th Cir.1973); United States v. Sugden, 226 F.2d 281 (9th Cir.1955), aff'd, 351 U.S. 916, 76 S.Ct. 709, 100 L.Ed. 449 (1956).
We recognize but reject the decision in Hall, in which the Ninth Circuit Court of Appeals considered the question of whether a communication initiated from a land-line telephone and then transmitted over the airwaves was a wire or oral communication. On this issue, the court held: "[W]e are forced to conclude that, when part of a communication is carried to or from a land-line telephone, the entire conversation is a wire communication and a search warrant is required." 488 F.2d at 197 (emphasis added). In reflecting on its decision, the court stated:
We realize that our classification of a conversation between a mobile and a land-line telephone as a wire communication produces what appears to be an absurd result. These conversations were intercepted by an ordinary radio receiver and not by a phone tap. Logically they should be afforded no more protection than those occurring between two radio transceivers. ... However, Congress's definition of a wire communication necessitates this conclusion.
Id. (emphasis added).
In Florida it is a well-settled principle that statutes must be construed so as to avoid absurd results. Realty Bond & Share Co. v. Englar, 104 Fla. 329, 143 So. 152 (1932). The instant statute can be so construed, and we do so to avoid reaching a result that would require a warrant or a court order to listen to the open and available airwaves. The definition of wire communications contained in section 934.02 must be interpreted in a common sense and reasonable manner. We construe the prohibition of interception of wire communications "made in whole or in part through the use of facilities for the transmission or communications by the aid of wire ..." to apply only to so much of the communication as is actually transmitted by wire and not broadcast in a manner available to the public. Just as it would be absurd to include within the definition of "wire communication" a message broadcast over a public address system for everyone to hear, even though the communication is aided by certain wires, it would be equally absurd and asinine to include within that definition television or radio signals broadcast with no reasonable expectation of privacy and openly available for anyone with the proper receiving equipment to hear. We emphasize the broadcast nature of such messages, since one who sends beeper messages should *1184 know, and in the instant case the Bailey organization did in fact know, that such communications are open to any members of the public who wish to take the simple step of listening to them.[4] Such signals clearly lack any expectation of privacy. They are, by the very nature of being broadcast, communications unprotected by any constitutional right or by Florida's wiretap law and therefore are admissible in evidence in the retrial of this cause.
For the reason expressed concerning the introduction of prejudicial, irrelevant testimony concerning a collateral crime not charged against appellants, we reverse the instant convictions and remand for a new trial.
It is so ordered.
SUNDBERG, C.J., and BOYD, ENGLAND, ALDERMAN and McDONALD, JJ., concur.
ADKINS, J., dissents.
NOTES
[1] Section 943.461(3) provides:

"Enterprise" means any individual, sole proprietorship, partnership, corporation, business trust, union chartered under the laws of this state, or other legal entity, or any unchartered union, association, or group of individuals associated in fact although not a legal entity, and it includes illicit as well as licit enterprises and governmental, as well as other entities.
(Emphasis supplied.)
[2] The preamble to chapter 77-334, Laws of Florida, reads in part as follows:

WHEREAS, organized crime is infiltrating and corrupting legitimate businesses operating within this state and this infiltration and corruption uses vast amounts of money, power, and all the techniques of violence, intimidation, and other forms of unlawful conduct to accomplish its goals, and
WHEREAS, in furtherance of such infiltration and corruption, organized criminal operatives utilize and apply to their unlawful purposes laws of the State of Florida conferring and relating to the privilege of engaging in various types of business enterprises, and
WHEREAS, infiltration and corruption of legitimate business provide an outlet for illegally obtained capital, harm innocent investors, entrepreneurs, merchants, and consumers, interfere with free competition, and thereby constitute a substantial danger to the economic and general welfare of the State of Florida, and
[3] 18 U.S.C. §§ 1961-1968 (1976).
[4] We do not reach any hypothetical questions involving more sophisticated methods of intercepting communications which in fact engender a reasonable expectation of privacy, such as land-line telephone messages transmitted in part by wireless signals.