[No. C006692. Third Dist. Dec. 19, 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
DEWITT ELMO BULLOCK, Defendant and Appellant.

[Opinion certified for partial publication.*]

---

* Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts I and IV.

COUNSEL

David S. Reeves, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Shirley A. Nelson and Wanda Hill Rouzan, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**SCOTLAND, J.**—While defendant was being booked on charges of possession of cocaine for sale and possession of marijuana for sale (Health & Saf. Code, §§ 11351.5, 11359), his pager audibly signalled on at least 20 occasions that it had received messages. Following each signal, the booking officer pushed button on the pager which caused the calling party's telephone number or code to be displayed on a screen. When the officer returned the calls, several persons who answered requested the delivery of rock cocaine.

After the trial court denied a motion to suppress this evidence (Pen. Code, § 1538.5), defendant was found guilty of both crimes and was sentenced to state prison.

On appeal, he contends that the officer's activation of the pager's display constituted a search which did not fall within any exception to the warrant requirement. Thus, he argues, evidence of the telephone conversations which resulted from this search should have been suppressed. Defendant also asserts the trial court erred in overruling his objection that the callers' requests for cocaine should have been excluded as hearsay. We shall reject both contentions and affirm the judgment.

As explained in detail in the published portion of this opinion, the officer's activation of the pager display was a warrantless search justified by probable cause and exigent circumstances: obtaining the electronic information before it became stale or was obliterated by successive incoming messages. The fact that the pager was capable of storing up to four telephone numbers did not undermine the urgent need to obtain the numbers without waiting for a search warrant. A reasonable, well-trained officer should not be expected to know the storage capacities, if any, of all of the pagers on the market. Even if the officer were aware that the pager was capable of storing some calls, he should not be required to take the chance that any of the messages might be overridden by subsequent calls during the time it would take to obtain a search warrant. Moreover, since the officer had reasonable grounds to suspect that the incoming calls were for the purpose of purchasing illicit drugs, immediate retrieval of the numbers was justified by the

exigency that, if their calls were not promptly returned, the callers might become unavailable or turn elsewhere to buy drugs, thus negating the officer's opportunity to obtain incriminating evidence against defendant.

As for the callers' requests to purchase rock cocaine, this evidence was properly admitted for a nonhearsay purpose. It constituted circumstantial evidence of the illegal use to which the pager was being put, which, in turn, was circumstantial evidence that the drugs seized from defendant were possessed for sale.

In the unpublished portion of this opinion, we reject defendant's remaining contentions that the search was the product of an unlawful detention, and that the evidence was insufficient to support the judgment.

## FACTS

On May 23, 1988, Officer Wells of the Stockton Police Department's narcotics division received information that an employee of a local motel had observed a bag containing marijuana and white powder appearing to be cocaine in room 115. According to the employee, the room was registered to a person named Calvin Hatton. The employee also indicated that one of the room's occupants had taken the bag of suspected drugs and placed it in an Oldsmobile, the license number of which the employee provided to the police department. Officer Wells ran a Department of Motor Vehicles (DMV) check on the Oldsmobile and Hatton, obtained his description, and learned that Hatton was the registered owner of the vehicle. DMV also reported that Hatton's driver's license was suspended.

While other officers began the process of obtaining a search warrant for Hatton, his car and room 115, Wells went to the motel and began watching the Oldsmobile. After approximately 45 minutes, an individual matching Hatton's description and another person, later identified as defendant, got into the Oldsmobile and drove off.

Wells followed and radioed for assistance. At Wells's request, a patrol unit stopped the Oldsmobile, and Hatton was placed under arrest for driving with a suspended license. The passenger identified himself as defendant, and a warrant check revealed that two arrest warrants had been issued for his apprehension. Defendant was arrested pursuant to the warrants, and a search of his person revealed an electronic pager clipped to his belt and $526 cash in his pants pockets.

After an officer arrived with the search warrant, Wells searched the Oldsmobile. He found a paper bag under a blanket in the middle of the

front seat. Inside the bag were three zip-lock baggies containing rock cocaine, two baggies containing marijuana, a sixth baggie containing a mixture of cocaine base in marijuana, and another baggie which held "numerous smaller empty zip-lock bindles."

During the hour it took Wells to complete the arrest report and booking procedure, defendant's pager signalled on at least 20 occasions that it had received messages. Based upon his training and experience in drug investigations, Wells knew that pagers are commonly used by drug dealers to facilitate the sale of controlled substances "via customers phoning up requesting an amount and naming a location for delivery." Realizing that the incoming calls might be of evidentiary value, Wells retrieved the callers' numbers by pushing a button which caused the numbers to be displayed on a screen on top of the pager. Some of the numbers appeared to be in code; others were regular seven-digit phone numbers. Wells called the telephone numbers. Three or four of the individuals who answered requested the delivery of cocaine. A typical request asked for a "twenty dollar rock."

An employee of the paging company testified that each of its subscribers is assigned a dedicated telephone number which he or she provides to persons wishing to contact the subscriber. To leave a message, a person calls that number, waits for a recorded message directing him or her to enter a numerical message, and then enters an identifying code number or a telephone number where the caller can be reached. When the pager receives a message, it will beep or vibrate. At the push of a button, the caller's code number or telephone number will appear on its display screen. Messages intended for a particular pager cannot be received by other units unless they are specially programmed to do so. Persons listening to a radio tuned to the frequency used by the pagers would not hear spoken messages but might hear the tones produced by the caller's touch-tone telephone. The pager seized from defendant had a memory that could store a maximum of four messages for retrieval at a later time.

DISCUSSION

I

DEFENDANT WAS LAWFULLY DETAINED*

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

* See footnote *ante*, page 380.

## II

## THE SEARCH OF THE PAGER WAS PROPER

■ Defendant correctly contends that the officer's activation of the pager's display mechanism constituted a "search" within the meaning of the federal and state Constitutions.

We see a parallel between the situation here and that presented in *Arizona* v. *Hicks* (1987) 480 U.S. 321 [94 L.Ed.2d 347, 107 S.Ct. 1149]. There, officers made a lawful, warrantless entry into an apartment to seek a suspect in a shooting and to look for other possible victims and weapons. While doing so, an officer noticed in plain view two expensive stereo systems "which seemed out of place in the squalid and otherwise ill-appointed four-room apartment." (*Id.*, at p. 323 [94 L.Ed.2d at p. 353].) Suspecting that the stereos were stolen, the officer moved some of the components, including a turntable, to obtain serial numbers which he reported to headquarters. A check of these numbers revealed that the turntable had been stolen in a robbery. The Supreme Court concluded that movement of the equipment constituted a search for which probable cause was required. The court reasoned that this exposure to view of concealed portions of the apartment and its contents, i.e., the serial numbers of stereo components which otherwise were in plain view, constituted a new invasion of the suspect's privacy unjustified by the exigent circumstance that validated the entry into the apartment. (*Id.*, at p. 325 [94 L.Ed.2d at p. 354].)

Like the serial numbers in *Arizona* v. *Hicks*, the messages received by defendant's pager were not displayed in plain view. Officer Wells had to push a button to retrieve them. We see no meaningful distinction between this conduct and the movement of stereo components in order to see otherwise unexposed serial numbers. In activating the pager display, Officer Wells undertook a search designed to expose to view concealed portions of defendant's pager. (*Arizona* v. *Hicks, supra*, 480 U.S. at p. 325 [94 L.Ed.2d at p. 354].)

This search constituted an invasion of defendant's Fourth Amendment interests because, as the trial court properly concluded, defendant established a reasonable expectation of privacy in the information housed in his pager. The pager was unlike those which receive verbal messages that can be heard and understood by someone possessing a duplicate pager or anyone listening to a radio scanner tuned to the broadcast frequency. (Cf. *People* v. *Medina* (1987) 189 Cal.App.3d 39, 45-49 [234 Cal.Rptr. 256]—the possessor of a pager which receives verbal messages broadcast by radio frequency has no reasonable expectation of privacy in the messages

transmitted to the pager.) Granted, one listening to a radio scanner on the frequency of defendant's pager might hear tones produced by the caller's use of a touch-tone telephone to leave a coded message. However, because such tones are not commonly understood by persons untrained or un-equipped to decode them, defendant had a reasonable expectation that the messages were not exposed to the public. (Cf. *Katz* v. *United States* (1967) 389 U.S. 347, 351 [19 L.Ed.2d 576, 582, 88 S.Ct. 507].)

■ Unlike in *Arizona* v. *Hicks, supra*, 480 U.S. 321, defendant does not claim that Officer Wells lacked probable cause to intrude upon defendant's reasonable expectation of privacy. Wells, an expert in the investigation of drug trafficking, knew that illicit drugs had been seen in a room which the officer reasonably could believe was occupied by defendant. Moreover, the drugs were later seized from a vehicle in which defendant was riding. Based upon the quantity and packaging of the drugs, the additional empty bindles, the large amount of cash found on defendant, and the pager—an instrument commonly used in selling illegal drugs—Wells had probable cause to believe that defendant was engaged in drug trafficking. Accordingly, Wells properly seized the pager as an instrument used in the commission of the crimes for which defendant was arrested. Thereafter, each time the pager signalled it had received a message, Wells had ample reason to believe that the incoming call was related to defendant's criminal activity. Thus, he had probable cause to search the beeper by activating the numerical display screen to obtain the message.

■ Nevertheless, defendant contends that the search could not be conducted without a warrant. Recognizing that the existence of exigent circumstances may excuse the warrant requirement (see, e.g., *People* v. *Lucero* (1988) 44 Cal.3d 1006, 1017 [245 Cal.Rptr. 185, 750 P.2d 1342]), he claims that no exigency existed here. At this point, we must part company with defendant.

Defendant relies on *United States* v. *Chadwick* (1977) 433 U.S. 1 [53 L.Ed.2d 538, 97 S.Ct. 2476]. However, that case does not support his argument. In *Chadwick*, federal agents made a warrantless seizure of a footlocker which they had probable cause to believe contained illegal drugs. Thereafter, they transported the footlocker to a federal building where it was opened and marijuana was discovered. In finding the search unlawful, the Supreme Court, inter alia, rejected the prosecution's claim that the footlocker's mobility justified dispensing with the warrant requirement. The court reasoned that once federal agents had seized the footlocker and transported it to headquarters under their exclusive control, there was no risk that the evidence could be destroyed or lost during the time it would take agents to obtain a search warrant. (*Id.,* at p. 13 [53 L.Ed.2d at pp. 549-550].)

Such was not the case here. Every activation of defendant's pager by an incoming call signalled a reasonable likelihood that the message was for the purpose of ordering drugs. Thus, each call constituted potentially incriminating evidence against defendant. In addition, each message was evidence of a new offense, attempted possession of controlled substances (*People* v. *Sui* (1954) 126 Cal.App.2d 41, 44 [271 P.2d 575]), by another offender whom Officer Wells had the authority to apprehend. Contrary to defendant's claim, the evidence established that a danger existed that the incoming telephone numbers would be lost unless quickly retrieved by the officer. As the prosecutor argued in opposition to the motion to suppress: "With information coming across the pager, if you don't activate it then and retrieve the information, you are not going to be able to get it. So certainly an exigency of circumstances [exists]. You can't just wait and 24 hours later have the same information."

Defendant stresses the fact that the pager could store incoming calls. Thus, he implies that the prosecution made no showing that any delay to obtain a warrant would result in the destruction of evidence. We disagree. The pager could store a maximum of four telephone numbers; yet, at least twenty were received during the booking process. Necessarily, some of those numbers would have been lost had the officer not timely retrieved them.

More importantly, in our view a reasonable, well-trained officer should not be expected to know the storage capacities, if any, of all the pagers on the market. Even if the officer were aware that the pager had some storage capacity, given the uncertainty of how many calls might come in, he should not be required to gamble on whether, due to the pager's limited memory capacity, any of the stored information may be lost during the time it would take to obtain a search warrant. The very real possibility that the evidence might be lost if not timely retrieved created an exigent circumstance necessitating the officer's immediate action. (See *People* v. *Lucero, supra*, 44 Cal.3d at p. 1017.) Given this exigency, Officer Wells was justified in immediately retrieving the numbers without first obtaining a search warrant.

Assuming an officer were aware that a pager had an unlimited ability to store incoming telephone numbers, the immediate retrieval of incoming messages would be justified by another exigency: the need to return the calls in a timely manner while the callers were likely to be present at the numbers they had indicated. When reasonable cause exists to suspect that the callers might be seeking to acquire drugs, an officer reasonably could believe that their need to buy drugs was acute and that they might turn to other sources if their calls were not promptly returned. Thus, any delay in returning the calls could result in the loss of evidence of illegal drug activity.

Since exigent circumstances permitted Officer Wells to dispense with the warrant requirement, the trial court properly denied defendant's motion to suppress.

## III

### THE CALLERS' REQUESTS FOR COCAINE WERE NONHEARSAY CIRCUMSTANTIAL EVIDENCE OF DEFENDANT'S GUILT

Objecting on the ground of hearsay, defendant sought to exclude testimony regarding the orders for cocaine which Officer Wells received when he returned calls that came in on defendant's pager. In response, the People asserted, among other things, that the testimony was not being offered for truth of that matter asserted. Rather, it constituted nonhearsay circumstantial evidence that defendant was selling an illegal substance.

The trial court concluded that the statements were hearsay but admitted them under the state of mind exception to the hearsay rule. (Evid. Code, § 1250, subd. (a).) The court commented: "I would limit the testimony only to show the state of mind of the callers, the fact that it establishes that the callers had the state of mind to purchase drugs. One can—if they wish, make the inference that the calls were coming into the pager for that purpose. Therefore, the pager was being used for the purpose of soliciting the sale of drugs. And then one can infer, if they wish, the possessor or the persons surrounding the pager having used the pager therefore possessed of the same intent."

■ Although the court properly admitted the evidence, it erred in its reasoning. The declarants' "states of mind" were not in issue and therefore were immaterial. Accordingly, the evidence could not be admitted for that purpose. More importantly, the statements did not constitute hearsay since they were not offered for the truth of the matters asserted. Rather, they constituted nonhearsay circumstantial evidence of defendant's guilt. (*People v. Fischer* (1957) 49 Cal.2d 442, 447 [317 P.2d 967].)

In *Fischer*, officers entered premises suspected of being used for placing illegal bets. While the officers were there, the telephone rang several times. An officer answered and took bets from the callers. In concluding that the conversations were properly admitted in evidence, the Supreme Court noted: "It is pertinent to observe that in the case of a bookmaker the telephone is usually an indispensable facility for the extension and safe operation of his business. It constituted a means by which bets might be placed with the defendant. These conversations came in the midst of the occurrences concerning the defendant at the time of his arrest. They were admitted for the

purpose of proving the use to which the telephone was being used. The use of the room occupied by the defendant was in issue and the nature of the telephonic call was a circumstance to establish that fact." (*Fischer, supra,* 49 Cal.2d at p. 447.)

Similarly, the callers' requests for drugs constituted circumstantial evidence of the illegal use to which defendant's pager was being put. Indeed, this was the correctly stated purpose for which the court admitted the evidence. Defendant's possession of a pager used for the placing of orders for delivery of cocaine was circumstantial evidence tending show that he was in the business of selling cocaine. This, in turn, was relevant circumstantial evidence that the contraband seized from the Oldsmobile was possessed for sale.

Consequently, even though the trial court's reasoning in overruling defendant's objection was not entirely correct, the court properly admitted the evidence for a nonhearsay purpose. ■ Since we are concerned with the correctness of the trial court's ruling, and not its reasoning, we may affirm even if the basis of the court's order is incorrect. (*West Pico Furniture Co.* v. *Superior Court* (1961) 56 Cal.2d 407, 413-414 [15 Cal.Rptr. 119, 364 P.2d 295]; *People* v. *Ainsworth* (1990) 217 Cal.App.3d 247, 250, fn. 4 [266 Cal.Rptr. 175].)

IV

THE JUDGMENT IS SUPPORTED BY SUBSTANTIAL EVIDENCE*

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

DISPOSITION

The judgment is affirmed.

Puglia, P. J., and Marler, J., concurred.

A petition for a rehearing was denied January 14, 1991, and appellant's petition for review by the Supreme Court was denied March 13, 1991.

---

* See footnote, *ante,* page 380.