[No. 29249-8-I.   Division One.   July 26, 1993.]

THE STATE OF WASHINGTON, *Respondent,* v. DAVID C.
WOJTYNA, *Appellant.*

*Joshua Weinstein* of *Washington Appellate Defender Association,* for appellant.

*Seth R. Dawson, Prosecuting Attorney,* and *David F. Thiele, Deputy,* for respondent.

WEBSTER, C.J. — David C. Wojtyna appeals his conviction of attempted possession of a controlled substance (cocaine) in violation of RCW 69.50.407 and RCW 69.50.401(d).

FACTS

On November 10, 1990, the Snohomish County Police seized a telepager pursuant to the arrest of a local cocaine dealer. For the next 6 days, the pager was left on and incoming calls were monitored. On November 16, the pager received an incoming call. A detective called the number and arranged a meeting with Wojtyna whereby a substance thought by Wojtyna to be cocaine (actually a powdered substitute) was exchanged for money.

Wojtyna was subsequently arrested and charged with attempted possession of a controlled substance. On May 23, 1991, he brought a motion to suppress claiming the evidence was obtained in violation of Washington's privacy act (RCW 9.73). The trial court denied the motion, stating:

> There wasn't anything intercepted and [the pager] wasn't . . . a device. What privacy, if any, the defendant lost here was that somebody else may answer the pager just as somebody else may answer a phone. And I don't think you would have this if the police were executing a search warrant and the phone rang in the premises and they answered the phone. They're not intercepting anything. It may be a ruse to answer a pager and act like a dealer, but that's not violation of the statute.

Wojtyna was convicted as charged.

DISCUSSION

Wojtyna first claims monitoring his incoming number on the pager was an illegal search in violation of article 1, section 7 of the Washington Constitution. He cites *State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808, 76 A.L.R.4th 517 (1986), where the court held that article 1, section 7 "prevent[s] the defendant's long distance home telephone records from being obtained from the phone company, or a pen register from being installed on her telephone connections, without a search warrant". *Gunwall*, 106 Wn.2d at 63.[1] Wojtyna claims that article 1, section 7 of the Washington Constitution affords him broader protection than its federal counterpart, the Fourth

---

[1]Pen registers are devices attached to telephone lines to identify dialed numbers.

Amendment, based on the application of the following six "criteria" enunciated in *Gunwall*:

(1) the textual language; (2) differences in the texts; (3) constitutional history; (4) preexisting state law; (5) structural differences; and (6) matters of particular state or local concern.

*Gunwall*, 106 Wn.2d at 58.

We disagree. Since *Gunwall* involved comparing the same constitutional provisions to be examined here, we adopt its analysis of the first, second, third, and fifth factors and examine only the fourth and sixth factors. *Gunwall*, 106 Wn.2d at 65-67; *see also State v. Boland*, 115 Wn.2d 571, 576, 800 P.2d 1112 (1990). Under the fourth factor, if there is previously established state law "responsive to concerns of its citizens long before they are addressed by analogous constitutional claims" (*Gunwall*, 106 Wn.2d at 62), it may "bear on the granting of distinctive state constitutional rights" (*Gunwall*, 106 Wn.2d at 61). Such is not the case here. Unlike in *Gunwall*, there is no long history and tradition of strict legislative protection of a phone number dialed to, displayed, and received from its intended destination, a pager, justifying resort to independent state constitutional grounds. Although the State of Washington has historically extended strong protection to telephonic and electronic communications, the operation and use of a pager is outside the scope of such traditional private communications. A pager is fundamentally different from a pen register, which is attached to a telephone line to identify the numbers a person dials. The activity condemned in *Gunwall* was seizure of a record of the phone numbers *dialed* by the defendant (either by examining telephone records or through the use of a pen register). Contrary to the seizure of a defendant's dialed numbers, the activity objected to here is the seizure of a number sent to and *received* by a *third party* which happened to be Wojtyna's. This is not a case where the State monitored every number Wojtyna dialed at the source, but rather, where his number was independently displayed and retrieved from the place to which he intended to send it. There-

fore, we find a lack of "preexisting state law" justifying resort to independent state grounds.

■ Under the sixth factor, resort to the state constitution may be appropriate if the subject matter is local in character or of particular state interest. *Gunwall*, 106 Wn.2d at 62. However, the federal constitution may be more appropriate if there appears to be a need for national uniformity. *Gunwall*, at 62. The determinations of other state courts on independent state grounds are instructive in determining whether a matter is local or national in character. *See Boland*, 115 Wn.2d at 577. Our research has not revealed any cases in other jurisdictions dealing with the specific issue of whether discovery of a defendant's number by monitoring a third party's pager is an unconstitutional search under independent state grounds.[2] Therefore, we find that the subject is not local in character or of particular state interest. Since we find that the facts of this case do not support a finding that resort to independent state grounds is necessary, we now turn to an analysis of the issue on federal constitutional grounds.

■ ■ The Fourth Amendment, like its Washington counterpart (article 1, section 7), protects a person's legitimate expectation of privacy from invasion by government action if the individual has shown that "he seeks to preserve [something] as private". *Katz v. United States*, 389 U.S. 347, 351, 19 L. Ed. 2d 576, 88 S. Ct. 507 (1967). In *United States v. Meriwether*, 917 F.2d 955 (6th Cir. 1990), the police, pursuant to a search warrant, seized a pager at the residence of a suspected drug dealer. When the defendant's number appeared on the pager, the police called him and arranged to

---

[2]This is not a case where the defendant claims suppression is warranted because the police unconstitutionally monitored his or her pager without a warrant. *People v. Pons*, 133 Misc. 2d 1072, 509 N.Y.S.2d 450 (Sup. Ct. 1986); *People v. Bullock*, 226 Cal. App. 3d 380, 277 Cal. Rptr. 63 (1990), *review denied* (Mar. 13, 1991); *People v. Medina*, 189 Cal. App. 3d 39, 45-49, 234 Cal. Rptr. 256 (where the court held that the possessor of a pager which receives verbal messages broadcast by radio frequency has no reasonable expectation of privacy in the messages transmitted to the pager), *cert. denied*, 484 U.S. 929 (1987).

sell him drugs. The court held that the monitoring of the pager did not constitute a "search" under the Fourth Amendment:

> Here, appellant fails to show that he has sought to preserve a message as private by transmitting it into a paging receiver over which he has no control. Indeed, the Court "consistently has held that a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties."

*Meriwether*, 917 F.2d at 959 (citing *Smith v. Maryland*, 442 U.S. 735, 743-44, 61 L. Ed. 2d 220, 99 S. Ct. 2577 (1979)). The court, after stating that a party sending his message to a pager has *not* "expressed his subjective desire to preserve his privacy", held:

> When one transmits a message to a pager, he runs the risk that the message will be received by whomever is in possession of the pager. Unlike the phone conversation where a caller can hear a voice and decide whether to converse, one who sends a message to a pager has no external indicia that the message actually is received by the intended recipient. Accordingly, when a person sends a message to a pager, he runs the risk that either the owner or someone in possession of the pager will disclose the contents of his message. Since the actual confidentiality of a message to a pager is quite uncertain, we decline to protect appellant's misplaced trust that the message actually would reach the intended recipient.

*Meriwether*, at 959. Under *Meriwether*, there was no constitutional violation.

Wojtyna also claims RCW 9.73 was violated since the police, by monitoring the pager, intercepted a private communication.[3] RCW 9.73.030(1) states

> it shall be unlawful for . . . the state . . . to intercept, or record any:
>
> (a) Private communication transmitted by telephone, telegraph, radio, or other device between two or more individuals between points within or without the state by any device electronic or otherwise designed to record and/or transmit said communication regardless how such device is powered or actu-

---

[3]Wojtyna claims that since the officers arrived at the arranged meeting as a direct result of the statutory violation, suppression is the appropriate remedy. *See* RCW 9.73.050 ("[a]ny information obtained in violation of RCW 9.73.030 . . . shall be inadmissible"); *State v. Salinas*, 121 Wn.2d 689, 853 P.2d 439 (1993); *State v. Fjermestad*, 114 Wn.2d 828, 836, 791 P.2d 897 (1990).

ated, without first obtaining the consent of all participants in the communication[.]

In support of this argument, Wojtyna cites *State v. Riley*, 121 Wn.2d 22, 846 P.2d 1365 (1993), which involved a "line trap" placed by the phone company tracing Riley's "hacking activity" to his home. After noting that the statute did not define the term "private communication", the court resorted to the "ordinary and usual meaning" as defined in the dictionary and held

> the "line trap" traced the hacking activity to, and discovered nothing more than, Riley's telephone number. A telephone number, unless it is itself communicated, does not constitute a "communication". Therefore, discovering Riley's telephone number via a tracer does not implicate RCW 9.73.030(1)(a).

*Riley*, 121 Wn.2d at 33-34. The court then distinguished *State v. Gunwall, supra,* stating:

> In *Gunwall*, this court held that a pen register records a "private communication" under RCW 9.73. . . . Although a pen register does not intercept spoken words, it does record an exchange of information — the dialing from one telephone number to another. A pen register is thus "comparable in impact to electronic eavesdropping devices in that it . . . may affect other persons and can involve multiple invasions of privacy." *Gunwall*, at 69. In contrast, all that is learned from a tracer is the telephone number of one party, the party dialing. A pen register may therefore be reasonably viewed as recording a "private communication", whereas a tracer may not.

*Riley*, 121 Wn.2d at 34.

■ We find that Wojtyna's claim must fail. As in *Riley*, all that was learned from the pager was the telephone number of one party, the party dialing. Discovery of the number did not affect other persons, involve multiple invasions of privacy, or record the exchange of information such as the dialing from one telephone number to another. Even though the *Riley* court stated "[a] telephone number, unless it is itself communicated, does not constitute a 'communication . . .' ", contrary to Wojtyna's claim, the court was clearly talking about the specific situation where there is an interception which "may affect other persons and [may] involve multiple invasions of privacy.' " Furthermore, as in *Meriwether*, Wojtyna cannot

show that he has sought to preserve the message as "private". By transmitting his number into a pager, Wojtyna has "run the risk" that it would be received by whomever is in possession or that the owner or someone in possession would disclose the contents. The confidentiality of the transmission was uncertain and there is no reason to find that it was intended to be "private". In addition, it is doubtful whether the pager constitutes a "device" within the meaning of the statute. As stated in *Meriwether*:

> the agent in the instant case, after legally obtaining the pager, simply pressed the digital display button and the challenged evidence appeared. The agent then visually observed the telephone numbers and recorded them. He did not utilize any electronic, mechanical or other device as proscribed by the statute.

*Meriwether*, 917 F.2d at 960.[4]

■ Wojtyna next claims that since he took possession of a substance that was not illegal, the evidence was insufficient to convict him of attempted possession of a controlled substance. However, *State v. Lynn*, 67 Wn. App. 339, 835 P.2d 251 (1992), moots Wojtyna's claim. In *Lynn*, the court affirmed a conviction for attempted possession despite the fact that the substance actually delivered was not a controlled substance. The court first cited RCW 9A.28.020, the attempt statute, which provides:

> (2) If the conduct in which a person engages otherwise constitutes an attempt to commit a crime, it is no defense to a prosecution of such attempt that the crime charged to have been attempted was, under the attendant circumstances, factually or legally impossible of commission.

The court then cited the following portion of *State v. Davidson*, 20 Wn. App. 893, 584 P.2d 401 (1978), *review denied*, 91 Wn.2d 1011 (1979), where the *Davidson* court stated:

> In this case, defendant intended to buy and possess goods he believed were stolen. He intended to do what he believed to be a criminal act and what would have been criminal if the facts had been as he perceived them. Under RCW 9A.28.020(1), his

---

[4]The *Meriwether* court was examining the federal wiretapping statute, 18 U.S.C. § 2510(4), which defines "intercept" as acquisition "through the use of any electronic, mechanical, or other device".

conduct satisfied the elements of attempt: (1) intent to commit a specific crime; (2) an act which is a substantial step toward the commission of that crime. He intended to buy stolen property and he tendered money in exchange for the property offered to him. Under our statute and the modern decisional law, he has no defense that the property turned out not to be stolen.

(Footnote omitted.) *Davidson*, 20 Wn. App. at 898. The *Lynn* court then held that the evidence was sufficient to support Lynn's conviction since "[t]he only difference between *Davidson* and the case at bar is that Lynn intended to buy a controlled substance rather than stolen property." *Lynn*, 67 Wn. App. at 348; *see also State v. Roby*, 67 Wn. App. 741, 746-47, 840 P.2d 218 (1992).

█ Finally, we note that the seriousness level of the offense was miscalculated since attempted possession of a controlled substance is an unranked offense. *State v. Mendoza*, 63 Wn. App. 373, 819 P.2d 387 (1991), *motion for discretionary review denied*, Supreme Court cause 58860-1 (Mar. 31, 1992). Therefore, we remand the case for resentencing as an unranked offense.

COLEMAN and Baker, JJ., concur.

Review denied at 123 Wn.2d 1007 (1994).