435 So.2d 842 (1983)
Arthur E. COPELAND, III, Appellant,
v.
STATE of Florida, Appellee.
No. 82-1349.
District Court of Appeal of Florida, Second District.
May 13, 1983.
Rehearing Denied August 3, 1983.
*843 James H. Kynes and D. Frank Winkles of Winkles & Trombley, P.A., Tampa, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and Charles Corces, Jr., Asst. Atty. Gen., Tampa, for appellee.
HOBSON, Acting Chief Judge.
Arthur E. Copeland, III, appeals an order adjudicating him guilty of first degree murder and sentencing him to life imprisonment with a minimum mandatory term of 25 years. We reverse and remand because the trial court erred in denying his motion to suppress a cassette tape recording containing self-incriminating statements made by him during a private conversation inside his apartment with one Reece Townsend. Unbeknownst to appellant, Townsend was wearing an electronic monitoring device which relayed the entire conversation to law enforcement officers outside the residence *844 who monitored and recorded it on the tape.
Scott Allen Collins was murdered with a knife and hammer in the early morning hours of January 25, 1981, at Collins' house trailer in Hillsborough County. There were no known witnesses and no immediate tangible leads. A breakthrough occurred in May 1981 when Reece Townsend of Lakeland, Florida, informed the Polk County Sheriff's Office that appellant, with whom he had been acquainted for several years, had told him on separate occasions that he and another individual had murdered Collins in Hillsborough County a few months before. After being advised of Townsend's allegations by the Polk County Sheriff's Office, Detective Alfonso of the Hillsborough County Sheriff's Office met with Townsend. At the meeting, Townsend voluntarily consented to wear an electronic monitoring device while attempting to engage appellant in another incriminating conversation concerning Collins' murder.
Thereafter, Assistant State Attorney Anthony Guarisco, Jr., filed a motion in the Circuit Court of Hillsborough County requesting authorization for the placement of an electronic monitoring device on Townsend's person for the purpose of monitoring and recording any conversations between Townsend, appellant and other persons unknown which might occur in appellant's residence in Hillsborough County. The motion incorporated by reference an affidavit of Detective Alfonso.
Based upon the assistant state attorney's motion and the accompanying affidavit of the detective, the circuit court found that probable cause existed to believe that appellant had murdered Collins. The court further determined that the placement of an electronic monitoring device on Townsend's body for the purpose of monitoring conversations occurring in appellant's apartment in Hillsborough County would result in obtaining evidence relating to the murder and would afford adequate protection for Townsend. The court accordingly issued an order on June 10, 1981, to remain in effect for 30 days, authorizing the electronic monitoring of conversations between Townsend, appellant and other persons unknown at appellant's residence in Hillsborough County.
On June 12, 1981, Townsend, fitted with an electronic monitoring device, entered appellant's residence in Hillsborough County as appellant's guest. Several law enforcement officers stationed themselves in parked vans located in front of and in back of appellant's apartment for the purpose of monitoring and recording on a cassette tape any conversation between Townsend and appellant. During an ensuing one-half hour conversation with Townsend, appellant made self-incriminating statements concerning Collins' murder.
As a result of appellant's recorded self-incriminating statements, a grand jury filed a two-count indictment charging him with the first degree murder and the armed burglary of Collins. Appellant thereafter filed a motion to suppress and a supplemental motion to suppress. The trial court conducted a suppression hearing and later denied the motions.
After appellant waived his right to a jury trial, the court conducted a trial at which it received into evidence the cassette tape recording of the conversation despite appellant's objection. At the conclusion of the trial it adjudicated him guilty of murder in the first degree and sentenced him to life imprisonment with a minimum mandatory term of 25 years.
The threshold issue on appeal is whether the application for the use of the electronic monitoring device and the order authorizing the use of the device complied with relevant provisions of chapter 934, Florida Statutes (1981), otherwise known as the Security of Communications Act.[1] At the outset, we stress that portions of chapter 934 authorizing the interception of wire or oral communications are statutory exceptions *845 to the federal and state constitutional right of privacy. In re Grand Jury Investigation, 287 So.2d 43 (Fla. 1973). As such, they must be strictly construed. Id.
Appellant contends here that the application did not comport with the requirements of sections 934.07 and 934.09(1)(c) and that the order did not satisfy the requirements of sections 934.09(3)(c) and (4)(e). We agree that these four provisions were not complied with.
Section 934.07 provides:
934.07 Authorization for Interception of Wire or Oral Communications.  The Governor, the Attorney General, or any state attorney may authorize an application to a judge of competent jurisdiction for, and such judge may grant in conformity with this chapter, an order authorizing or approving the interception of wire or oral communications by the Department of Law Enforcement or any law enforcement agency of this state... .
(Emphasis added.)
The record before us does not reveal who authorized the application below. The state nevertheless concedes that the assistant state attorney authorized it. Appellee's brief, p. 2. It is settled, of course, that section 934.07 does not empower an assistant state attorney to authorize an application for the interception of wire or oral communications. State v. Daniels, 389 So.2d 631 (Fla. 1980).
Sections 934.09(1)(c) and (3)(c) read:
934.09 Procedure for Interception of Wire or Oral Communications. 
(1) Each application for an order authorizing or approving the interception of a wire or oral communication shall be made in writing upon oath or affirmation to a judge of competent jurisdiction and shall state the applicant's authority to make such application. Each application shall include the following information:

... .
(c) A full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous;

... .
(3) Upon such application, the judge may enter an ex parte order, as requested or as modified, authorizing or approving interception of wire or oral communications within the territorial jurisdiction of the court in which the judge is sitting if the judge determines on the basis of the facts submitted by the applicant that:

... .
(c) Normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous;... .
(Emphasis added.)
The state admits that the application did not indicate pursuant to section 934.09(1)(c) whether law enforcement officials tried normal investigative procedures which failed or why such procedures reasonably appeared either to be unlikely to succeed or to be too dangerous if tried. Appellee's brief, p. 2. There is no question but that such silence is fatal to the validity of an application. Wilson v. State, 377 So.2d 237 (Fla. 2d DCA 1979).
Given that the application did not comply with section 934.09(1)(c), it necessarily follows that the issuing court was precluded from issuing an intercept order: section 934.09(3)(c) unequivocally requires that a court, before issuing an order, determine on the basis of the facts submitted in the application that normal investigative procedures have been tried and failed or reasonably appeared to be unlikely to succeed if tried or to be too dangerous.
Lastly, section 934.09(4)(e) states:
(4) Each order authorizing or approving the interception of any wire or oral communication shall specify:
... .
(e) The period of time during which such interception is authorized, including a statement as to whether or not the interception shall automatically terminate *846 when the described communication has been first obtained.

(Emphasis added.)
The issuing court, while specifying in the order that the order would remain in effect for the 30-day statutory maximum,[2] failed to state therein whether it would automatically terminate when the described communication had been first obtained. We construe section 934.09(4)(e) to mean that an issuing court may allow in the order for a continued interception after the desired communication has been first obtained if the application, pursuant to section 934.09(1)(d), includes a particular description of facts establishing probable cause to believe that, after the described type of communication has been first obtained, additional communications of the same type will occur. In this case, the application did not contain such a description. Thus, the issuing court had no choice but to state in the order that the order would automatically terminate when the desired communication had been first obtained. Of course, the court failed to so state.
The purpose of the requirement in section 934.09(4)(e) that the issuing court indicate in the order whether the order shall automatically terminate when the desired conversation has been first seized is to prevent a "general search" in violation of the fourth and fourteenth amendments to the federal constitution and article I, section 12 of the Florida Constitution. Where, as here, the application does not, pursuant to section 934.09(1)(d), contain a particular description of facts establishing probable cause to believe that, after the described type of communication has been first obtained, additional communications of the same type will occur, the inclusion within the order of a statement pursuant to section 934.09(4)(e) that the order shall automatically terminate once the described type of communication has been obtained ensures that, once the described type of communication has been seized, executing officers are not free to continue intercepting conversations until the expiration of the 30-day period. The 30-day statutory maximum is simply a statutory limitation which terminates every order at the expiration of 30 days regardless of whether the desired communication has been obtained or the objective of the order has been attained.
In Berger v. New York, 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967), the Court struck down a New York eavesdropping statute because it allowed for an unconstitutional general search. One of the Court's express reasons for so holding was the statute's failure to require that the issuing court place a termination date on the order once the conversation sought was seized. 388 U.S. at 58-60, 87 S.Ct. at 1883-84, 18 L.Ed.2d at 1051-53.
The issuing court's order below thus amounted to an unconstitutional general warrant since it failed to state in the order that the order would terminate once the desired communications had been first intercepted.[3]
The issue remaining on appeal is whether the evidence gathered from the electronic surveillance was saved by section 934.03(2)(c) due to Townsend's voluntary consent to the interception. This section provides:
934.03 Interception and Disclosure of Wire or Oral Communications Prohibited. 
... .
(c) It is lawful under this chapter for a law enforcement officer or a person acting under the direction of a law enforcement officer to intercept a wire or oral communication when such person is a party to the communication or one of the parties to the communication has given prior consent to such interception and the *847 purpose of such interception is to obtain evidence of a criminal act.
The Supreme Court of Florida held in State v. Sarmiento, 397 So.2d 643, 645 (Fla. 1981), that, "insofar as [section 934.03(2)(c)] authorizes the warrantless interception of a private conversation conducted in the home, it is unconstitutional and unenforceable." (Emphasis in original.) The court subsequently remarked in Hill v. State, 422 So.2d 816, 818 (Fla. 1982), that Sarmiento does not prohibit the use of electronic surveillance devices by undercover officers or informants in the home "as long as a warrant has issued by the appropriate judicial officer."
The state asserts that the supreme court, by employing the words "warrantless" and "warrant" in the above-quoted phrases of Sarmiento and Hill, intended to convey the message that where a person is speaking inside his home with someone who fits within the category of persons described in section 934.03(2)(c) (e.g., an undercover police officer or informant), as here, the constitutional requirements for a search warrant need be satisfied, but the other procedures of chapter 934, such as sections 934.07 and 934.09, need not be. Appellant, noting that the supreme court twice used the term "intercept warrant" in Sarmiento, replies that the court meant to say that the constitutional requirements and the other provisions of chapter 934 must be satisfied in order for section 934.03(2)(c) to operate.
It is not imperative that we address this issue since we have determined that the order below violated the constitutional prohibition against general warrants. Nevertheless, assuming that the order below did not amount to a general warrant, we still cannot accept the state's argument.
It is unnecessary to become entangled in a discussion regarding semantics in order to reject the state's contention on this issue. In our view, the court in Sarmiento and Hill did not intend to attach any significance to its choice of wording in those cases. This view is buttressed by a recognition that the court in those cases simply was not dealing with this particular issue. A resolution of this question entails a closer look at Sarmiento.
Sarmiento stands for the principle that a person conversing inside his residence in Florida with another individual enjoys a reasonable expectation of privacy under article I, section 12, of the Florida Constitution, that persons outside his residence are not monitoring and recording the conversation by means of an electronic surveillance device. The procedures of chapter 934 were established in order to effectively protect this constitutional right of individuals in Florida to be free from the unreasonable interception of private communications by any means. See § 934.01(2).
To decide, as the state suggests, that the procedures of chapter 934 need not be complied with where a person is speaking inside his home with someone who fits within the category of persons described in section 934.03(2)(c) (e.g., an undercover police officer or informant), while at the same time recognizing, as the state must, that the procedures of chapter 934 need be satisfied in a case where a person is talking inside his home with one who does not fall within the category of persons described in section 934.03(2)(c) (e.g., an accomplice), would be to hold that a person's expectation of privacy in the former situation with respect to unknown listeners outside his home is somehow "less reasonable" and less worthy of protection than is a person's expectation of privacy in the latter situation. In our view, the allegiance of the listener inside the home simply has no bearing on a person's expectation of privacy inside his home with regard to unknown outside listeners. A person talking inside his home should therefore be entitled to the full panoply of protection afforded by the procedures of chapter 934, regardless of the loyalty of the listener inside the home.
In sum, given both that the application and the order did not comply with the aforementioned provisions of chapter 934 and that the order permitted an unconstitutional general search, the conversation was unlawfully obtained. Hence, the trial court erred by admitting into evidence at trial the *848 cassette tape recording of the conversation. See Hoberman v. State, 400 So.2d 758 (Fla. 1981).
Accordingly, we reverse and remand for a new trial.
REVERSED and REMANDED.
DANAHY and SCHOONOVER, JJ., concur.

ON MOTION FOR REHEARING
PER CURIAM.
The state initially contends on its motion for rehearing that the amendment to article I, section 12, Florida Constitution,[4] which became effective during pendency of this appeal, now makes admissible the evidence which we held inadmissible. See United States v. White, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971). It submits that this amendment is controlling in this case, relying on the general rule that disposition of a case on appeal is done in accordance with the law in effect at the time of the appellate court's decision instead of the law in effect at the time the judgment appealed was rendered.
In State v. Lavazzoli, 434 So.2d 321 (Fla. 1983), our state supreme court held that the amendment to article I, section 12, must be given prospective effect only, thereby ruling inapplicable the aforementioned general rule. Thus, regardless of the merits of the state's argument that the evidence we held inadmissible is now admissible, which we need not address, the change in article I, section 12, does not apply retroactively in this case.
The state's other argument on its motion for rehearing is without merit.
Accordingly, we deny the motion for rehearing.
HOBSON, A.C.J., and DANAHY and SCHOONOVER, JJ., concur.
NOTES
[1] See §§ 934.01, et seq., Fla. Stat. (1981). Most of the provisions of chapter 934 are identical, or nearly identical, to those contained in Title III of the federal Omnibus Crime Control & Safe Streets Act of 1968. 18 U.S.C. §§ 2510, et seq. (West 1978).
[2] See § 934.09(5), Fla. Stat. (1981).
[3] We note that the intercept order also failed to satisfy section 934.09(5), which states in pertinent part:

Every order ... shall contain a provision that the authorization to intercept ... must terminate upon attainment of the objective... .
[4] I
DECLARATION OF RIGHTS
SECTION 12. Searches and seizures  The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures, and against the unreasonable interception of private communications by any means, shall not be violated. No warrant shall be issued except upon probable cause, supported by affidavit, particularly describing the place or places to be searched, the person or persons, thing or things to be seized, the communication to be intercepted, and the nature of evidence to be obtained. This right shall be construed in conformity with the 4th Amendment to the United States Constitution, as interpreted by the United States Supreme Court. Articles or information obtained in violation of this right shall not be admissible in evidence if such articles or information would be inadmissible under decisions of the United States Supreme Court construing the 4th Amendment to the United States Constitution.
(New language is underlined.)