636 So.2d 1372 (1994)
Roberta JACKSON, Appellant,
v.
STATE of Florida, Appellee.
No. 92-01381.
District Court of Appeal of Florida, Second District.
May 13, 1994.
James Marion Moorman, Public Defender, and Robert F. Moeller, Asst. Public Defender, Bartow, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Davis G. Anderson, Jr., Asst. Atty. Gen., Tampa, for appellee.
LAZZARA, Judge.
Roberta Jackson appeals her judgment and sentence for trafficking in cocaine. She contends that the trial court erred in denying her amended motion to suppress. We agree and reverse.
In June of 1991, a detective with the Sarasota police department submitted a sworn ex parte application to a circuit judge for an order authorizing the duplication of Jackson's telephone pager. The judge granted the application and issued an order authorizing law enforcement officers "to acquire a duplicate pager and intercept telephone numbers" called into Jackson's pager for a period of thirty days. He found that "[t]he information *1373 likely to be obtained is relevant to an ongoing criminal investigation" involving Jackson and her violations of Florida's drug laws. He then directed GTE Communications Carrier to cooperate with law enforcement in implementing the order. In July of 1991, another detective repeated the same process before a different circuit judge and obtained an identical order.
Armed with this duplicate display pager, detectives began monitoring numbers called into Jackson's display pager. They determined that the numbers in sequence reflected a two or three digit code that identified the caller, the telephone number of the caller, and a two or three digit code that indicated the amount of drugs the caller wanted to purchase from Jackson. They also corroborated this information with visual surveillance of Jackson in her 1990 Nissan automobile. For example, on one occasion, after intercepting a series of digitized transmissions on their duplicate display pager while monitoring Jackson's display pager, the detectives followed Jackson to a restaurant where they observed her participate in what they characterized as a narcotics transaction.
In late August of 1991, a detective used the information derived from the duplicate display pager in an affidavit to obtain a search warrant for Jackson's automobile. During the course of the search, detectives discovered a quantity of cocaine and, as a result, Jackson was arrested and later informed against for trafficking in cocaine pursuant to section 893.135(1)(b)1., Florida Statutes (1991). After the trial court denied the amended motion to suppress, Jackson entered a plea of nolo contendere, specifically reserving her right to appeal.
Jackson alleges that the search warrant was based primarily on communications illegally intercepted through the duplicate display pager and that without this tainted information the facts relied on to establish probable cause were otherwise stale. She argues that before a judge can authorize law enforcement to acquire and use such a device to intercept numbers called into the original display pager, the specific requirements of sections 934.07 and 934.09, Florida Statutes (1991), must be followed. Thus, she contends, since there was noncompliance with these statutory mandates, the trial court should have excluded evidence derived from the duplicate display pager under section 934.06, Florida Statutes (1991), when it was considering the merits of her motion.
The state's position is that a duplicate display pager is no more intrusive than a pen register and is not governed by these statutory requirements.[1] Instead, it argues a judge need only adhere to the procedure outlined in sections 934.32 and 934.33, Florida Statutes (1991), to authorize law enforcement to use such a device. However, the state candidly concedes that if a duplicate display pager is covered by the requirements of sections 934.07 and 934.09, those requirements were not met in this case. The record supports this concession.
Section 934.07 strictly defines a limited category of individuals who can authorize an application before a judge for a warrant intercepting wire, oral, or electronic communications. The purpose of the statute is to place responsibility in a specifically enumerated "narrow class of officials to insure that such decisions come from a centralized, politically responsive source." State v. Daniels, 389 So.2d 631, 636 (Fla. 1980). A law enforcement officer is not included in this group.
Section 934.09 sets out the stringent procedures that must be followed before a judge can issue a wiretap warrant. These procedures require the submission of a detailed application, a finding of probable cause, and a determination that normal investigative techniques have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous. The statute also contains requirements governing the duration of the order and any extensions, the recording and minimization of intercepted communications, periodic reports to the judge, and notice to affected persons. See *1374 Rodriguez v. State, 297 So.2d 15 (Fla. 1974); Miller v. State, 619 So.2d 9 (Fla. 4th DCA 1993).
These statutes are exceptions to the federal and state constitutional rights to privacy and must be strictly construed. Copeland v. State, 435 So.2d 842 (Fla. 2d DCA 1983). To that end, section 934.06 specifically prohibits the use of any evidence obtained or derived from an interception of communications that violates these statutes. This statutory exclusion is absolute and without regard to the good faith exception of United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). State v. Garcia, 547 So.2d 628 (Fla. 1989).
In contrast, the requirements for obtaining an order for the installation of a pen register under sections 934.32 and 934.33 are considerably less stringent.[2] Unlike a wiretap warrant, a law enforcement officer has the authority to apply for such an order. § 934.32(1)(b). The application need only contain the identity of the applicant and the law enforcement agency conducting the investigation and a certification "that the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by the investigating agency." § 934.32(2). Based on this certification, a judge is authorized to issue the order without requiring any greater specificity. § 934.33(1) and (5).
With this background, the issue we confront is whether information intercepted by a duplicate display pager constitutes the interception of a protected electronic communication under section 934.02(12), Florida Statutes (1991), such that the state must first seek authorization pursuant to sections 934.07 and 934.09 before it can lawfully obtain and use such a device. This issue is one of first impression in this state and requires us to examine the interplay between federal and Florida law.
We have held that Congress, through its legislation, has "preempted the field of the interception of wire communications under its power to regulate interstate communications." State v. McGillicuddy, 342 So.2d 567, 568 (Fla. 2d DCA 1977). We have noted that although states are permitted to regulate wiretap warrants, their standards must be "at least as strict as those set forth in the federal act." 342 So.2d at 568. Thus, as in McGillicuddy, we look to the applicable federal law. We also examine its interpretation by the federal courts under Florida's established rule of statutory construction "which recognizes that if a state law is patterned after a federal law on the same subject, the Florida law will be accorded the same construction as in the federal courts to the extent the construction is harmonious with the spirit of the Florida legislation." O'Loughlin v. Pinchback, 579 So.2d 788, 791 (Fla. 1st DCA 1991).
In United States v. Suarez, 906 F.2d 977 (4th Cir.1990), cert. denied, 498 U.S. 1070, 111 S.Ct. 790, 112 L.Ed.2d 852 (1991), the court, citing extensively to legislative history, summarized significant changes to the federal wiretap law that Congress enacted in 1986 that impact on this case. The court stated:
Title I of the Electronic Communications Privacy Act of 1986 (`the Act') amended Title III of the Omnibus Crime Control and Safe Streets Act of 1968 (`Title III') to protect against unauthorized interception of `electronic' communications. Congress found that amendments to Title III were needed `to update and clarify Federal privacy protections and standards in light of dramatic changes in new computer and telecommunications technologies.' Voice communications transmitted via common carrier were protected under the 1968 act, but `there [were] no comparable Federal statutory standards to protect the privacy and security of communications transmitted by new noncommon carrier communications services or new forms of telecommunications and computer technology.' The legislative history specifically refers to paging devices and makes clear that display *1375 pagers are included within the Act's coverage.[3]
906 F.2d at 980 (citations and footnotes omitted) (emphasis added). The court also noted that:

The Act superseded state laws with respect to electronic communications, and states were required to enact statutes at least as restrictive as the new federal law before they could authorize their own courts to issue interception orders. Congress deemed it necessary to allow states two years to bring their laws into conformity with the new federal law because of the `substantial changes' wrought by the Act.
906 F.2d at 981 (emphasis added).
Although the federal act does not define a display pager, it is clear from the legislative history that Congress was referring to a device "equipped with screens that can display visual messages, usually the telephone number of the person seeking to reach the person being paged." S.Rep. No. 541, 99th Cong., 2d Sess. 10, reprinted in 1986 U.S.Code Cong. & Admin.News at 3555, 3564.[4] Further, as explained in United States v. Meriwether, 917 F.2d 955 (6th Cir.1990):
The Senate Judiciary Committee illuminated what might be considered an `interception' of a pager communication:
`Radio communications transmitted over a system provided by a common carrier are not readily accessible to the general public... . [T]he unauthorized interception of a display paging system, which includes the transmission of alphanumeric characters over the radio, carried by a common carrier, is illegal.'
S.Rep. No. 541, 99th Cong., 2d Sess. 15, reprinted in 1986 U.S.Code Cong. & Admin. News 3555, 3569 (emphasis added).
917 F.2d at 960.
Congress also provided enlightenment with regard to what constitutes an electronic communication. As noted in the legislative history:
As a general rule, a communication is an electronic communication protected by the federal wiretap law if it is not carried by sound waves and cannot be fairly characterized as containing the human voice. Communications consisting solely of data, for example, and all communications transmitted only by radio are electronic communications. This term also includes electronic mail, digitized transmissions, and video teleconferences.
S.Rep. No. 541, 99th Cong., 2d Sess. 14, reprinted in id. at 3568 (emphasis added).[5]
Significantly, however, Congress also made it clear that pen registers were not covered by the protections of the new act:
Subsection 101(b)(4) of the Electronic Communications Privacy Act amends subsection 2511(2) of title 18 to add a new paragraph (h) to that subsection. Proposed subparagraph (i) of paragraph (h) clarifies that the use of pen registers and trap and trace devices are not regulated by chapter 119 of title 18. The use of those devices will be regulated by new chapter 206 of title 18 as amended by the Electronic Communications Privacy Act.
S.Rep. No. 541, 99th Cong., 2d Sess. 20, reprinted in id. at 3574. Congress codified this clarification in 18 U.S.C. § 2511 (2)(h)(i) (1986).
The Florida legislature followed Congress' mandate and, in 1988, it substantially amended chapter 934 to include within its ambit safeguards for the interception of electronic communications. See Ch. 88-184, Laws of Fla.[6] Specifically, the legislature added a *1376 definition of "electronic communication" that was identical to its federal counterpart. Ch. 88-184, § 1, at 1017 (codified as amended at § 934.02(12), Fla. Stat. (Supp. 1988)); 18 U.S.C. § 2510(12) (1986) ("Electronic communication" means any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic, or photooptical system.") It also conformed its definition of "intercept" to that of the federal act. Ch. 88-184, § 1, at 1016 (codified as amended at § 934.02(3), Fla. Stat. (Supp. 1988)); 18 U.S.C. § 2510 (4) (1986) ("Intercept" means the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device.") (emphasis added). Finally, to conform to the federal act, the legislature mandated for the first time that the interception of electronic communications were to be governed by the same strict requirements as the interceptions of wire and oral communications. Ch. 88-184, § 5, at 1024, and § 7, at 1025 (codified as amended at §§ 934.07 and 934.09, Fla. Stat. (Supp. 1988)); 18 U.S.C. §§ 2516 and 2518 (1986).
The legislature also followed Congress' lead by exempting pen registers from the protection of the amended wiretap law. Ch. 88-184, § 2, at 1022 (codified as amended at § 934.03(2)(i)1., Fla. Stat. (Supp. 1988)). The statutes it created to regulate these devices conformed to those enacted by Congress. Ch. 88-184, § 10, at 1038-1039 (codified as amended at §§ 934.32 and 934.33, Fla. Stat. (Supp. 1988)); 18 U.S.C. §§ 3122 and 3123 (1986).
Based on this historical background, we find the federal courts' analysis in Suarez and Meriwether that a display pager is included within the new federal wiretap act to be persuasive. First, the courts were construing a federal law that preempts Florida's prototype. Second, their construction is harmonious with the spirit of Florida's wiretap legislation to safeguard privacy interests. § 934.01, Fla. Stat. (1991); Copeland. We also find it reasonable to conclude that when the legislature amended chapter 934 it was aware of Congress' intent to include information transmitted to a display pager within the definitional ambit of electronic communication. See Mozo v. State, 632 So.2d 623, 630 (Fla. 4th DCA 1994). Accordingly, we hold that information transmitted to a display pager is an electronic communication under section 934.02(12), and that to lawfully intercept such information through a duplicate display pager, the state must strictly comply with the requirements of sections 934.07 and 934.09.
We note that the only reported state case we have found in which the court construed the provisions of the new federal wiretap law also concluded that display pagers were covered by the act. In Mauldin v. State, 874 S.W.2d 692 (Tex. Ct. App. 1993), the court determined that:
This 1986 statute clearly added digital display pagers to the devices that Congress considered to be covered by Title 18, UNITED STATES CODE sections 2510(12), 2511, 2516 and 2518 (West Supp. 1993). See S.Rep. No. 99-541, 99th Cong., reprinted in 1986 U.S.C.C.A.N. 3555 at 3569. The statute mandated procedures for the states to follow before they could intercept `electronic communications' such as a digital display pager. 18 U.S.C.A. § 2516 (West Supp. 1993).
874 S.W.2d at 695 (emphasis added). However, the court found that at the time the police obtained authorization for the duplicate display pager used in that case, the two-year grace period allotted to the states to conform to the amended federal wiretap law had not expired. Thus, it based its decision on the federal statute existing at the time of the authorization that "did not forbid the intercept of the display pager's messages" and concluded that the use of the duplicate display pager was lawful. Id.
In so holding, we acknowledge Dorsey v. State, 402 So.2d 1178 (Fla. 1981), the primary case relied on by the state. In Dorsey, the police used a scanner to intercept messages sent to a beeper or pocket pager. The court rejected the argument that such messages were wire communications under section 934.02(1), Florida Statutes (1977). It focused on the "broadcast nature of such messages" and determined "that such communications *1377 are open to any members of the public who wish to take the simple step of listening to them." 402 So.2d at 1183-1184 (footnote omitted) (emphasis in original). Thus, the court held "that there can be no expectation of privacy in `beeper' messages sent over the airwaves and that these messages are not protected by Florida's wiretap law." 402 So.2d at 1180.
However, in this case, we are concerned with what constitutes an electronic communication under a law enacted after Dorsey was decided. Moreover, unlike the beeper messages in Dorsey, we are dealing with a communication that Congress has found is not readily accessible to the general public. Thus, we distinguish Dorsey.
As noted, the state concedes, and the record reflects, noncompliance with sections 934.07 and 934.09. Thus, under section 934.06, we must exclude any information obtained by the duplicate display pager in determining whether probable cause otherwise existed to justify issuing the search warrant against Jackson's automobile, without regard to the good faith exception of Leon. Garcia, 547 So.2d at 630.
After excluding from the affidavit the information derived from the duplicate display pager, see State v. Alphonse, 315 So.2d 506 (Fla. 4th DCA 1975), we conclude that the remaining facts are insufficient to establish probable cause. The last incident supporting a probable cause determination occurred approximately six and one-half months prior to the issuance of the warrant. This time lapse is clearly insufficient under the law to sustain the warrant. Hamelmann v. State, 113 So.2d 394 (Fla. 1st DCA 1959).
We, therefore, reverse Jackson's judgment and sentence for trafficking in cocaine and remand to the trial court with directions to grant her amended motion to suppress.[7]
However, because the issue presented is one of first impression in the state of Florida and because our decision impacts on law enforcement techniques relating to wiretaps, we certify the following question as one of great public importance:
DOES INFORMATION TRANSMITTED TO A DISPLAY PAGER CONSTITUTE AN ELECTRONIC COMMUNICATION AS DEFINED BY SECTION 934.02(12), FLORIDA STATUTES (1991), SUCH THAT TO LAWFULLY INTERCEPT SUCH INFORMATION THROUGH A DUPLICATE DISPLAY PAGER, THE STATE OF FLORIDA MUST FIRST SEEK AUTHORIZATION PURSUANT TO SECTIONS 934.07 AND 934.09, FLORIDA STATUTES (1991)?
Reversed and remanded with directions. Question certified.
CAMPBELL, A.C.J., and PARKER, J., concur.
NOTES
[1] Contra People v. Pons, 133 Misc.2d 1072, 509 N.Y.S.2d 450, 453 (Sup.Ct. 1986) ("The monitoring of [a] telephone pager device is more intrusive than the use of a pen register. The pager device is capable of conveying substantive information by combining digits in various sequences. Both telephone numbers and coded messages may be conveyed.")
[2] Section 934.02(20), Florida Statutes (1991), defines pen register to mean "a device which records or decodes electronic or other impulses which identify the numbers dialed or otherwise transmitted on the telephone line to which such device is attached."
[3] Unlike this case, the parties in Suarez agreed that the new federal act covered digital display pagers used in that case. 906 F.2d at 980 n. 7.
[4] Based on the record, Jackson's display pager fits this description.
[5] In United States v. Herring, 993 F.2d 784 (11th Cir.1993), cert. denied, ___ U.S. ___, 114 S.Ct. 347, 126 L.Ed.2d 312 (1993), the court construed the definition of electronic communication broadly to include the interception of satellite pay-per-view television programming.
[6] These substantive amendments, as originally codified in chapter 934 of the 1988 Supplement to Florida Statutes 1987, have remained substantially the same, except for a few changes that do not affect the resolution of this case. See Ch. 89-269, Laws of Fla.; Ch. 91-33, § 14, at 282, Laws of Fla.
[7] Based on this disposition, we need not reach Jackson's other contention that the trial court erred by imposing costs not authorized by the statutes cited in the judgment. See Williams v. State, 601 So.2d 1277 (Fla. 2d DCA 1992).