SHAHOOD, C.J.
The City of Lake Worth had a policy of recording all incoming and outgoing calls from its 911 call center. Ralph Brillinger and Lori Nedzweckas, employees of the City, made personal outgoing calls from the call center. Shelly Stark, not a City employee, made incoming calls to the call center. All of the above calls were recorded. On July 22, 2002, Brillinger, Stark, and Nedzweckas filed a class action complaint against the City for damages and declaratory and equitable relief arising out of the City’s Police Department’s interception, recording and use of telephone communications in violation of the Florida Security of Communications Act. The trial court granted the City’s Renewed Motion for Summary Judgment. We agree and affirm.
After an evidentiary hearing, the trial court found that the Lake Worth Police Department operated a communications center at its offices and since July of 2000, all incoming and outgoing telephone calls made to and from the center have been intercepted and recorded by the City. The center has four 911 emergency phones with two additional lines that were unpublished, non-emergency lines. There were also five other non-911 phones containing six incoming telephone lines, only one being a published, non-emergency number; and an additional unpublished, non-emergency line.
Since February 4, 2000, the City informed only callers who used the published non-emergency number that their calls were being recorded. Individuals making calls to and from the unpublished, non-emergency lines were not notified that their calls were being recorded. The City started notifying these callers that their calls were being intercepted and recorded only on or about July 26, 2002.
Brillinger and Nedzweckas claim that they did not know their calls on the unpublished, non-emergency lines were recorded prior to being shown transcripts of telephone conversations that were intercepted and recorded by the City. Moreover, Stark received numerous telephone calls from Nedzweckas from the communications cen *267 ter and made numerous telephone calls to Nedzweckas at the Center which were intercepted and recorded by the City.
The trial court decertified the class and dismissed the complaint. Appellants filed a First Amended Complaint and refiled a motion for summary judgment on liability. In response the City filed a Motion for Summary Judgment. The trial court denied both motions.
The City filed a Renewed Motion for Summary Judgment, which the trial court granted.
The trial court found in its final summary judgment that “[t]he methods used by Lake Worth were reasonable and comported with Florida law” and “[t]he recordings were made within the statutory scheme, and within the scheme provided for 911 calls and responses thereto.”
Section 934.03(1), Florida Statutes (2000), of the Florida Communications Act prohibits the intentional interception of any “wire, oral, or electronic communication[s].” However, the Act provides exceptions for law enforcement agencies, two of which are relevant but inapplicable to this case.
The first exception allows the interception of a wire, oral, or electronic communication by an investigative or law enforcement officer when the officer is “a party to the communication or one of the parties to the communication has given prior consent to such interception and the purpose of such interception is to obtain evidence of a criminal act.” § 934.03(2)(c), Fla. Stat. (2000). This exception does not apply to a blanket recording of every telephone call received on a police department’s emergency complaint and information lines.
Another exception is found in section 934.03(2)(g), Florida Statutes (2000), which authorizes recordings of incoming calls on designated 911 telephone lines and published non-emergency telephone lines, and outgoing 911 call-backs. However, the City recorded all incoming and outgoing calls- from its communications center, which included unpublished non-emergency lines, an unpublished non-emergency number, along with outgoing calls that are not 911 call-backs, taking this case outside the exception.
Beyond the exceptions found in section 934.03, the City argues that the Florida Emergency Telephone Act permits it to record all incoming and outgoing calls from its 911 call center. Section 365.171, Florida Statutes, empowers the State Technology Office (“STO”) of the Department of Management Services (“department”) with the following purpose:
(4) State plan. — The department shall develop a statewide emergency telephone number “911” system plan. The plan shall provide for:
(a) The establishment of the public agency emergency telephone communications requirements for each entity of local government in the state.
(b) A system to meet specific local government requirements. Such system shall include law enforcement, firefighting, and emergency medical services and may include other emergency services such as poison control, suicide prevention, and emergency management services.
[[Image here]]
The department shall be responsible for the implementation and coordination of such plan. The department shall adopt any necessary rules and schedules related to public agencies for implementing and coordinating such plan, pursuant to chapter 120.
§ 365.171(4), Fla. Stat. (2000).
Pursuant to section 365.171 the STO enacted section 3.4.1.1(I) of the 9-1-1 *268 Emergency Telephone Number Plan, which provides that “Each call taker shall be equipped with access to instant playback recording capability with at least 8 minutes of storage capacity.” Also, the STO provided for a backup facility if the primary public safety answering point (“PSAP”) is down:
(C) Enhanced 9-1-1 systems shall include provisions for back-up facilities to which calls can be routed in the event of failure of a Primary PSAP.
Type 3 systems shall establish an alternate safety agency to which voice only calls can be routed over existing seven-or ten-digit lines.
§ 3.4.1.3(C), 9-1-1 Emergency Telephone Number Plan.
The City argues that in order to comply with the 911 statute all the calls needed to be recorded as it is impossible to know whether an incoming call is an emergency call or a personal call. In support, testimony and affidavits from those familiar with the 911 system showed that the recording equipment cannot know whether an out-going call is a personal call or an emergency call back and that the emergency and non-emergency lines are not distinguished when received. However, the Florida Emergency Telephone Act is not an exception to the prohibitions found in the Florida Communications Act.
Nevertheless, we hold that the City had a “good faith belief’ that the manner in which the instant playback system was installed in the PSAP was legal. § 934.10(2)(c), Fla. Stat. (2000). The instant playback system followed the requirements of the Florida 911 Plan implemented by the STO and, according to affidavits on record, the City’s PSAP is set up in the same manner in which the PSAPs are set up in all other cities and counties in Florida. Although the trial court did not grant the City’s motion based on the good faith exception, its decision was correct and should be affirmed. See Dade County Sch. Bd. v. Radio Station WQBA, 731 So.2d 638, 644 (Fla.1999) (under the tipsy coachman doctrine, an appellate court may affirm a trial court’s decision that was correct in result, but based on the wrong reason).
We are unpersuaded by all other issues raised by appellant and affirm without further discussion.

Affirmed.

POLEN and MAY, JJ., concur.