WETHERELL, J.
 

 Robert Jason Perdue raises two issues in this direct appeal of his convictions and sentences: 1) that the trial court erred in denying his motion to suppress an audio recording made by a 911 dispatcher, and 2) that section 893.13, Florida Statutes, is facially unconstitutional. We affirm the second issue without further comment based on
 
 Flagg v.
 
 State, 74 So.3d 138 (Fla.
 
 *714
 
 1st DCA 2011), and we reverse the first issue for the reasons that follow.
 

 On January 17, 2010, a dispatcher with the Escambia County Sheriffs Office, received a 911 call from a woman reporting a disturbance occurring at her daughter’s house next door. The woman gave the dispatcher the telephone number for that residence, and the dispatcher called the number to see if anyone there needed police assistance. After the line was answered, the dispatcher heard screaming and yelling in the background. No one said anything on the line; the line was simply open, and the dispatcher could hear a male threaten to shoot everyone in the house and himself. This call was recorded.
 

 A deputy was dispatched to the residence where, according to the arrest report, he could hear arguing inside the house but he could not make out what was being said. The deputy did not come in contact with Perdue until he exited the house. Perdue denied threatening anyone, but his wife told the deputy that Perdue threatened to shoot her and his mother. After securing a rifle inside the house, the deputy arrested Perdue for two counts of aggravated assault with a deadly weapon. Perdue was also charged with drug possession and introducing contraband into a county detention facility as a result of a Xanax tablet and marijuana found on him in a search incident to the arrest.
 

 Perdue moved to suppress the recording of the outgoing 911 call. He argued that the recording violated section 934.01(4), Florida Statutes (2009), and his right to privacy. After a hearing at which only the 911 operator testified, the trial court denied the motion. The court determined that the recording fell within the exception in section 934.03(2)(g)2, which the court broadly construed to allow an emergency agency to intercept and record any wire communication in order to acquire necessary information to render aid and assistance.
 

 After the motion to suppress was denied, Perdue pled nolo contendere to the offenses, reserving the right to appeal the denial of the motion. The parties stipulated, and the trial court agreed, that the motion was “dispositive for purposes of appeal.” The trial court accepted the plea and, consistent with the negotiated plea agreement, sentenced Perdue to a downward departure sentence of 24 months of community control followed by 24 months of probation. This timely appeal follows.
 

 The facts material to the motion to suppress are not in dispute. Accordingly, we review the trial court’s ruling on the motion de novo.
 
 See Miles v. State,
 
 60 So.3d 447, 450-51 (Fla. 1st DCA 2011).
 

 Section 934.03 prohibits the intentional interception and disclosure of wire, oral, or electronic communications without the parties’ consent or court authorization. However, an employee of an agency operating an emergency 911 system may lawfully intercept and record
 

 incoming wire communications on designated “911” telephone numbers and published nonemergency telephone numbers staffed by trained dispatchers at public safety answering points only.
 
 It is also lawful for such employee to intercept and record, outgoing wire communications to the numbers from which such incoming wire communications were placed when necessary to obtain information required to provide the emergency services being requested,.
 

 § 934.03(2)(g)2, Fla. Stat. (2009) (emphasis added).
 

 Communications intercepted in violation of Chapter 934, Florida Statutes, are not admissible in judicial proceedings, subject to a limited exception not applicable
 
 *715
 
 here.
 
 See
 
 § 934.06, Fla. Stat. (2009). Accordingly, as the trial court recognized, the disposition of the motion to suppress turns on whether the recording of the outgoing 911 call falls within the exception in section 934.03(2)(g)2.
 

 The trial court interpreted the statutory language emphasized above to permit the recording of the dispatcher’s outgoing call to the victim’s residence even though it was a different number than the original 911 call. The court reasoned that the statute should be interpreted broadly to facilitate provision of emergency services to individuals in need. However, the court’s broad interpretation of the statute is contrary to the plain language of the statute. It is also contrary to the legislative history of the statute.
 

 The plain language of section 934.03(2)(g)2 allows emergency agencies to record
 
 only
 
 (1) incoming 911 calls, and (2) outgoing call-backs by the 911 dispatcher to the number from which the incoming call was placed when the call-back is necessary to obtain information required for emergency assistance. The statute does not allow other outgoing calls by the 911 dispatcher to be recorded without the consent of the person being called, even if the outgoing call is in reference to or relates to an incoming 911 call.
 

 The Attorney General reached the same conclusion in Advisory Opinion No.2002-56. There, the Attorney General was asked whether an employee of a municipal police department may record “an outgoing call made in reference to the recorded incoming call, if the outgoing call is made on the same line on which the incoming call is received.”
 
 See
 
 Op. Att’y Gen. Fla. 2002-56 (2002). The Attorney General answered that “[a]n outgoing call may be recorded only when it is made to the telephone number from which an emergency assistance request call was made in order to obtain information required to provide the emergency services being requested or when a called party gives permission for the call to be recorded.”
 
 Id.
 

 The legislative history of the language emphasized above provides further support for this “narrow” interpretation of the statute. Prior to this language being added to the statute in 1987,
 
 [1]
 
 section 934.03(2)(g)2 authorized law enforcement agencies to record incoming 911 calls, but not outgoing calls.
 
 See
 
 § 934.03(2)(g)2, Fla. Stat. (1985);
 
 see also
 
 Fla. S. Comm, on Judiciary-Crim., SB 154 (1987)
 
 [2]
 
 Staff Analysis 1 (rev. Apr. 7, 1987) (on file with Fla. Dep’t of State) (explaining that existing law only authorized incoming 911 calls to be recorded and that an amendment was needed because: “Law enforcement agencies routinely record incoming emergency calls from citizens. Follow-up calls by the agency are often needed to send aid to the caller or verify information from the caller. In some instances, these outgoing follow-up calls are currently being recorded by law enforcement agencies using a telephonic system that does not distinguish between incoming and outgoing calls.”); Fla. H.R. Comm, on Science & Tech., HB 86 (1987) Staff Analysis 2 (Feb. 18, 1987) (on file with Fla. Dep’t of State) (hereinafter “HB 86 Staff Analysis”) (“Law enforcement agencies ... routinely record incoming calls received from citizens regarding emergency matters, reports of crime, etc. Frequently, return calls are necessary to verify information or seek additional facts in order to provide the emergency ser
 
 *716
 
 vice.”). The original bill proposed to broadly allow “the recording of any outgoing call to any number, so long as the outgoing call is ⅛ response to’ the incoming emergency call,”
 
 see
 
 HB 86 Staff Analysis at 2; however, the bill was amended through the committee process to its present language to “clarif[y] that the outgoing calls which may be recorded are those calls made to the same numbers from which the incoming emergency calls are made.”
 
 Id.
 

 In light of the plain language of the statute and its legislative history, we reject the State’s contention that section 934.03(2)(g)2 should be broadly construed to allow the recording of all outgoing calls by 911 dispatchers in the interest of promoting public safety. Limiting the statute to its terms does not in any way preclude dispatchers from calling numbers other than the incoming number when necessary to provide assistance or to send out police protection; the call simply may not be recorded without the consent of the person being called. Moreover, contrary to the State’s argument in its brief, limiting the statute to its terms will not lead to the absurd result of imposing civil or criminal liability on 911 dispatchers if they happen to record outgoing calls other than callbacks to the number of the incoming 911 call.
 
 See Brillinger v. City of Lake Worth, 978
 
 So.2d 265 (Fla. 4th DCA 2008) (affirming summary judgment in favor of city for recording outgoing calls from emergency call center other than “911 call-backs” because even though the recording did not fall within the exception in section 934.03(2)(g)2, the city had a good faith belief that the recording was authorized by other provisions of Florida law governing 911 systems); § 934.10(2)(c), Fla. Stat. (2009) (providing a “complete defense” to criminal and civil liability where recording in violation of Chapter 934, Florida Statutes, but is based on a good faith determination that the conduct is permitted by federal or state law).
 

 We also reject the State’s “tipsy coachman” argument that the recording in this case was lawful because the communication captured on the recording was an oral communication between Perdue and the victims in which Perdue had no expectation of privacy. First, the recording that was the subject of the motion to suppress included only the communications that were picked up over the telephone, which clearly meet the definition of “wire communication” in section 934.02(1).
 
 Cf. Dorsey v. State,
 
 402 So.2d 1178, 1183 (Fla. 1981) (interpreting the definition of wire communication to apply “only to so much of the communication as is actually transmitted by wire and not broadcast in a manner available to the public”). Second, there is no basis in the limited record of the suppression hearing to conclude that Perdue did not have an expectation of privacy in the communication, which occurred in the residence he periodically shared with the victims. See
 
 generally Stevenson v. State,
 
 667 So.2d 410, 412 (Fla. 1st DCA 1996) (explaining that the location of a conversation is a significant factor in determining the reasonableness of the defendant’s expectation of privacy, and noting that conversations occurring inside an enclosed area or in a secluded area are more likely to fall within the definition of oral communication in section 934.02(2)).
 

 Accordingly, for the reasons stated above, we reverse the denial of the motion to suppress. It appears from the record that the motion was only dispositive of the aggravated assault offenses;
 
 [3]
 
 the motion
 
 *717
 
 does not affect the drug offenses because the record reflects, and Perdue does not contest, that the deputy had probable cause apart from the 911 recording to arrest Perdue and search him incident to that arrest. Therefore, we remand for the trial court to vacate only Perdue’s convictions and sentences for the two counts of aggravated assault. Perdue’s remaining convictions and sentences are affirmed.
 

 AFFIRMED in part; REVERSED in part; and REMANDED.
 

 WOLF and CLARK, JJ., concur.
 

 [1]
 

 . Ch. 87-301, § 1, Laws of Fla.
 

 [2]
 

 . Senate Bill 154 became Chapter 87-301, Laws of Florida. The original version of the bill was identical to House Bill 86, as were the amendments to each bill adopted during the committee process.
 

 [3]
 

 . We assume based on the State’s stipulation that the motion to suppress was dispositive that Perdue's wife was unwilling to testify consistent with her statement to the deputy
 
 *717
 
 because, even without the 911 recording, the wife’s testimony (and/or that of the other victim) could have supported a conviction on the aggravated assault charge.